LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER URQUIJO, et al., <br><br> Plaintiff, <br><br> v. <br><br> STATE OF CALIFORNIA, et al., <br><br> Defendants. | Case No. 5:22-cv-02133-AH-DTB <br><br> [*Honorable Magistrate Judge David T. Bristow*] <br><br> **DISCOVERY MATTER** <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL NON-PARTY COMPLIANCE WITH SUBPOENA** <br><br> *Submitted on the briefs pursuant to Dkt. No. 128* |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case arises from the fatal officer-related shooting of Raymond Loftin ("Loftin") by California Highway Patrol Sergeant Daniel Howard. Defendant Howard was acting in the course and scope of his employment with the state of California at the time of the shooting giving rise to this lawsuit. At the time of the shooting, Defendant Howard had no information about Loftin, including not

1

knowing whether Loftin had a history of substance abuse.  The key issue in this case is whether the shooting was excessive and unreasonable under federal and state law.

On March 17, 2025, Defendant Howard served a subpoena under Federal Rules of Civil Procedure Rule 45 to Cedar House Life Change Center ("Cedar House") for Loftin's substance abuse treatment records.  ("Exhibit A" to the Declaration of Dale K. Galipo).  Plaintiffs objected to Defendant's subpoena on March 26, 2025. (Dkt. No. 127-6).  Defendants now seek a motion to compel Cedar House to disclose Loftin's records of treatment for substance abuse.  Plaintiffs hereby oppose Defendant's motion.  Plaintiffs contend that disclosure of Loftin's Cedar House records would be a violation of the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 299b-2, 45 C.F.R. §§ 164.502(a)(1), the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56.10, and Decedent's California constitutional right to privacy concerning medical information under Cal. Cost. art I, § 1.  Plaintiffs also contend that these records are deemed confidential by federal regulations. 42 C.F.R. § 2.2(a).  *United States v. Johnston*, 810 F.2d 841, 842 (8th Cir. 1987) ("Congress declared that patient records are confidential.").  Thus, the records Defendant seeks are beyond the scope of Federal Rules of Civil Procedure, Rule 26.  Plaintiffs further contend that records from Loftin's substance abuse treatment are irrelevant and more prejudicial than probative under Federal Rules of Evidence, Rules 401, 402, 403.

**II. ANALYSIS**

**A. HIPPA and Privacy Rights Preclude Disclosure**

Loftin's substance abuse treatment records from Cedar House fall under HIPAA protections.  "The test of whether [Defendant] should obtain access to [Loftin's] medical records is . . . whether the privilege has been waived by putting the privileged information 'at issue.'" *E.E.O.C. v. Serramonte*, 237 F.R.D. 220, 224 (N.D. Cal. 2006) (citing *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 625-26 (S.D. Cal. 1999)).  Under HIPAA, the privacy of personal health information lasts

up to 50 years after death. *Est. of Serna v Cnty. Of San Diego*, 689 F. Supp. 3d 848, 869 (S.D. Cal. 2023). Although HIPAA allows the disclosure of these records under select circumstances, "good cause" must be shown by the applicant, which includes the court weighing the public interest and the need for disclosure against injury to the patient, physician-patient privilege, and treatment services. *Id*. Plaintiffs contend that here, there is no "good cause" for Cedar House to disclose Loftin's treatment records. The moving party must show a legitimate state interest and that its "actions are narrowly tailored to meet the legitimate interest. The more sensitive the information, the stronger the state's interest must be." *Doe v Attorney Gen. of United States* 941 F.2d 780, 796 (9th Cir. 1991); *Thorne v City of El Segundo*, 726 F.2d 459, 469-71 (9th Cir. 1983).

Plaintiffs contend that Defendant Howard, who was acting in the course and scope of his employment with the State of California at the time of the shooting, has not shown a compelling state interest in Loftin's records of substance abuse treatment. There is no evidence that any alleged substance abuse by Loftin affected Loftin's quality of life, life expectancy, or relationship with the plaintiffs in this case.

Defendants cite *Chavez v County of Kern* 2013 U.S. Dist. LEXIS 95732 (E.D. Cal. 2013) to suggest that the good cause requirements of HIPAA do not apply to deceased persons. However, the *Chavez* court held that a case-by-case basis analysis is appropriate in determining whether such records should be disclosed. In *Chavez,* the decedent's sought-after records that detailed his history of mental illness was deemed relevant because the plaintiffs, on behalf of the decedent, filed a claim under the American with Disabilities Act ("ADA"), which required them to prove that the decedent was a "qualified individual with a disability." *Id*. at 7. Since the decedent's medical status was an issue in the *Chavez* case, the court ruled that the need for disclosure overrode any public interest.

The reasoning of *Chavez* does not apply to the instant case, where Loftin's history of substance abuse and medical or mental health history is not at issue. Defendant Howard was not aware whether Loftin had a history of substance abuse or mental health issues at the time of the shooting, and this has no bearing on whether it was reasonable to use deadly force against Loftin. Therefore, in this case, Defendant's purported need for disclosure does not outweigh the public interest in keeping such records confidential as it did in *Chavez.*

## B. Substance Abuse Records are Confidential

The Substance Abuse and Mental Health Services Administration and U.S. Department of Health and Human Services released a final rule revising the federal regulations governing the Confidentiality of Substance Use Disorder Patient Records, Title 42 CFR Part 2 (Part 2) in 2020. These regulations state that alcohol and drug abuse patient treatment records are confidential and may only be disclosed in limited circumstances. 42 C.F.R. §§ 2.1(a), 2.2(a) (2008). Limiting disclosure is meant to ensure that a person who seeks treatment for addiction is not made more vulnerable than an addict who does not seek treatment. § 2.3(b)(2). In the absence of patient consent, a party seeking access to such records must obtain a court order upon a showing of good cause. Courts assess good cause by "weigh[ing] the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services." §§ 2.1(b)(2)(C), 2.2(b)(2)(C). Protection against disclosure continues even after the patient's death. §§ 2.1(d), 2.15(b)(2).

The United States Code and Code of Federal Regulations provide safeguards and procedures to prevent circumvention or evasion of the statutes, and to facilitate compliance therewith. 42 C.F.R. §2.1. The purpose of the regulations is to impose restrictions upon the disclosure and use of substance use disorder records. 42 C.F.R. § 2.2(a). The regulations prohibit disclosure and use of patient records. *Id.* at §2.2(b). "Patient records" is defined broadly.

The regulation pertains to any reference to an individual's substance use disorder or condition that caused that substance use disorder; and the scope of the prohibition of disclosures extends to any information identifying a patient as being or having been diagnosed with a substance use disorder or having been referred for treatment. 42 C.F.R. § 2.11, 2.12. "[I]t is clear that the privilege provided by 290dd is a strong one and is not to be lightly set aside." *State v. Ctr. For Drug Free Living, Inc.*, 842 So. 2d 177, 181 (Fla. Dist. Ct. App. 2003). The additional protections under 42 CFR Part 2 for protection of disclosure of patient's confidential communications have been literally interpreted—thus, "[a] court cannot order disclosure of a patient's confidential communications merely because the patient has sued someone or has plead matters that seem related to the subject of the confidential communications." *Jane H. v. Rothe*, 488 N.W.2d 879, 884 (N.D. 1992) (pleadings that raise an emotional/mental health question is an inadequate basis for disclosure).

### C. The Records from Treatment at Cedar House May be Protected by the Psychotherapist-Patient Privilege

Loftin's records for substance abuse treatment may naturally include records for therapy and/or mental health evaluations provided in conjunction with the substance abuse treatment. In *Jaffee,* the Supreme Court recognized that litigants possess a psychotherapist-patient privilege, holding that "confidential communications between a licensed psychotherapist and her [or his] patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence. *Jaffee v. Redmond,* 518 U.S. 1, 15, (1996); *See also Oleszko v. State Comp. Ins. Fund*, 243 F.3d 1154, 1156 (9th Cir. 2001). Loftin has not waived his psychotherapist-patient privilege. In so holding, the *Jaffee* court further noted that:

> The psychotherapist-patient privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental

health of our citizenry, no less than its physical health, is a public good of transcendent importance.

*Jaffee*, at 518 U.S. at 11.

### D. These Records are Irrelevant

In addition to the foregoing protections, Plaintiffs contend that the records Defendant seeks are not relevant and would not be admissible if this case goes to trial. Under *Graham v. Connor*, 490 U.S. 385, 397 (1989), evidence of facts and circumstances not known to the involved officers at the time of the shooting incident are irrelevant. *See also Witt v. West Virginia State Police, Troop 2*, 633 F.3d 272, 275 (4th Cir. 2011) (noting district court's decision that the plaintiff's "criminal history and possession of illegal narcotics . . . are irrelevant to the excessive force analysis because, as the troopers themselves acknowledge, they 'did not know' these facts 'at the time' they allegedly beat [the plaintiff]"); *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997) ("[W]hen considering a charge of excessive force under the Fourth Amendment, evidence outside the time frame of the shooting is irrelevant and prejudicial."). In *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 (9th Cir. 2011), the Ninth Circuit reiterated that information *unknown* to an officer at the time of his use of force – or information *acquired after the incident* by investigators or during discovery – cannot be considered in the reasonableness analysis.

Evidence of Loftin's substance abuse, which was unknown to Defendant Howard at the time of the shooting, is irrelevant to the issue of whether it was reasonable for Defendant Howard to have used deadly force against him. The records that the Defendants are requesting have no bearing on any factual dispute of the case and should be, accordingly, made inadmissible and inaccessible.

These records are also not relevant to damages. Defendant's assertions that Loftin's alleged substance abuse impacted his life expectancy and relationship with his mother and children, the plaintiffs, are purely speculative. As to Loftin's survival damages, and in particular, those for pre-death pain and suffering, Plaintiffs are claiming damages for Loftin's pre-death pain and suffering from the injuries he

sustained as a result of the use of deadly force against him, not pre-death pain and suffering from prior to the date of the incident. Loftin's mental health and medical records from before the incident are also not relevant to his pre-death pain and suffering resulting from the use of deadly force against him.

### E. The Records are Improper Character Evidence

Federal Rules of Evidence, Rule 404(a) provides that "Evidence of a person's character or a trait of a character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Under Rule 404, evidence of substance abuse cannot be used to show Loftin's character or that he acted or would have acted in conformity with any negative character trait in the future. *Palmerin v. Riverside*, 794 F.2d 1409, 1414 (9th Cir. 1985) ("The federal rules bar the use of any circumstantial evidence that requires an inference of a person's character to make it relevant . . . ."). Loftin's substance abuse treatment records, if admitted at trial, carry the danger that the jury will make an unlawful inference about his character—that people who have suffered from substance abuse are inherently bad people who do not deserve the same verdict as someone who lived their life completely sober would.

### F. The Records are More Prejudicial than Probative

Under the Federal Rules of Evidence, Rule 403, if the prejudicial nature of the evidence outweighs its probative value, it will be excluded. "Unfair prejudice" means "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *Larez v. City of Los Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991) (noting that evidence is likely to inflame the jury if it tends to evoke a juror's anger or punitive impulses).

Admission of drug evidence also poses a substantial risk of leading to "litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d

Cir. 1992); *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (en banc); *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007). "In today's climate, any evidence as to a litigant's use of drugs has an obvious potential for being extraordinarily prejudicial—for creating the prospect of deflecting the factfinders' attention from the matters that are really at issue in the case to everyone's universally-shared concerns as to the problems that drug usage is creating for our society." (*Gregory v. Oliver*, 2003 WL 1860270 at *1); *Huizar v City of Anaheim (Estate of Diaz)* 840 F.3d 592, 602-03 (9th Cir. 2016) (affirming that the evidence of decedent's drug use was minimally probative and highly prejudicial as it improperly influenced the jury, and that the district court should have bifurcated the liability and damages phases of the trial).

Evidence of Loftin's history of substance abuse treatment has an overwhelmingly high probability of misleading the jury into reaching a verdict that wrongfully takes into consideration Loftin's previous drug use or distracting the jury from the main issue in the case. If the case proceeds to trial, Plaintiffs would move to exclude the Cedar House records on these grounds. This likelihood of exclusion weighs against disclosure of the records.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court to deny Defendant's motion to compel.

DATED: June 18, 2025	LAW OFFICES OF DALE K. GALIPO

By:	*s/ Dale K. Galipo*
	Dale K. Galipo
	Attorney for Plaintiffs,
	Christopher Urquijo, et al.