Dean Gazzo Roistacher LLP
Lee H. Roistacher, Esq. (SBN 179619)
Kimberly A. Sullivan, Esq. (SBN 317857)
Aleries Lau, Esq. (SBN 340709)
440 Stevens Avenue, Suite 100
Solana Beach, CA 92075
Telephone: (858) 380-4683
Facsimile: (858) 492-0486
E-mail:   lroistacher@deangazzo.com
          ksullivan@deangazzo.com
          alau@deangazzo.com

Attorneys for Defendant
Sergeant Daniel Howard

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER URQUIJO, individually, LORI MEEKS, individually and as successor in interest to Raymond Loftin, deceased, Y.L. by and through his guardian ad litem Sebrina Lucky, individually and as successor in interest to Raymond Loftin, deceased, E.L. by and through her guardian ad litem Sebrina Lucky, individually and as successor in interest to Raymond Loftin, deceased, and B.L. by through his guardian ad litem Sebrina Lucky, individually and as successor in interest to Raymond Loftin, deceased.<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA, CALIFORNIA HIGHWAY PATROL, SERGEANT DANIEL HOWARD, OFFICER NICHOLAS MERCADO, OFFICER SERGIO VASQUEZ, and DOES 4-10, Inclusive.<br><br>Defendants. | Case No.: 5:22-cv-02133-AH-DTB<br><br>**REPLY OF DEFENDANT SERGEANT DANIEL HOWARD TO PLAINTIFFS' OPPOSITION TO HIS MOTION TO COMPEL NON-PARTY COMPLIANCE WITH SUBPOENA [FRCP 45]**<br><br>**DISCOVERY MATTER**<br><br>Date: July 10, 2025<br>Time: 10:00 a.m.<br>Courtroom: 4<br>Magistrate: David T. Bristow<br><br>Complaint Filed: 11/30/2022<br>Trial Date: 02/24/2026 |

///

///

0

## I. INTRODUCTION

This Court should grant defendant Howard's motion to compel non-party Cedar Care to comply with Howard's subpoena and produce the documents sought – *a motion not opposed by Cedar Care*.

Plaintiffs' opposition is procedurally improper as plaintiffs have no standing to oppose Howard's motion. Federal Rule of Civil Procedure 45 circumscribes a party's ability to prevent production by a non-party to a subpoena two options, and one of them is not opposing a motion to compel. A party may : (1) file a motion to quash; or (2) seek a protective order. They did neither. Therefore, they waived all arguments in their opposition.

Even if this Court is generous and considers plaintiffs' opposition, each argument lacks merit. Plaintiffs' waived any right to preclude disclosure of the Cedar Care records based on HIPPA, confidentiality, privacy and the psychotherapist-patient privilege by seeking survival and wrongful death damages, seeking damages for decedent's emotional distress, including loss of enjoyment of life, loss of life, and loss of earning capacity, and seeking damages for interference with their familial relations for the alleged wrongful death of decedent.

Any privacy concerns can be obviated by producing the records under the current protective order. ECF 40, 117.

## II. ANALYSIS

### A. Procedural Deficiencies

#### 1. Plaintiffs Waived Their Right to Oppose Howard's Motion to Compel

Attempting to circumvent the explicit procedural requirement of filing a motion to quash or seeking a protective order, plaintiffs first improperly objected to the subpoena served on Cedar Care and now improperly oppose Howard's motion to compel. However, "[a] party cannot object to a subpoena duces tecum served on a non-party, but rather, must seek a protective order or make a motion

to quash." *S. Cal. Hous. Rights Ctr. v. K3 Holdings, LLC*, No. 2:22-cv-00697-MCS-JC, 2023 U.S. Dist. LEXIS 181236, at *10 (C.D. Cal. Mar. 10, 2023); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (same); *Reed v. Trinity Servs. Grp. Inc.*, No. CV 21-00016 PHX JAT (CDB), 2022 U.S. Dist. LEXIS 247108, at *4 (D. Ariz. July 7, 2022) (same); *see also Strike 3 Holdings, LLC v. Doe*, No. 3:23-cv-01558-H-MSB, 2024 U.S. Dist. LEXIS 12042, at *3 (S.D. Cal. Jan. 23, 2024) ("As an initial matter, Defendant, a party to the instant action, cannot object to a subpoena served on a nonparty, but rather must make a motion to quash or seek a protective order. [Citation]. Accordingly, Defendant's objection is procedurally improper and warrants denial on this basis alone.")

Plaintiffs failed to file a motion to quash or seek a protective order. ECF 127-6. Indeed, plaintiffs only objected to a subpoena issued *by the State*. Not only is plaintiffs' objection legally insufficient, but the objection is to a non-existent subpoena. Howard issued the subpoena, *not the State*. Regardless, plaintiffs waived any opposition to Howard's motion by failing to move to quash or seek a protective order. The Court should disregard their opposition.

**2. Plaintiffs' Objection Was Legally Insufficient**

Rule 45 of the Federal Rules of Civil Procedure does not impose a time for a party to object to a subpoena because filing an objection is not a remedy available for a party when responding to a subpoena to a non-party. If the Court concludes that plaintiffs' objection was somehow legally sufficient (which it is not), than the Court should impose the statutory 14-day limit on the plaintiffs to object, just like it does on nonparty. Fed. R. Civ. P. 45(d)(2)(B) ("A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The

///

objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.")

"Failure to serve timely objections waives all grounds for objection." *McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002).

In *Schoonmaker v. City of Eureka*, No. 17-cv-06749-VC (RMI), 2018 U.S. Dist. LEXIS 192603, at *2-4 (N.D. Cal. Nov. 7, 2018), the Court explained:

> Upon consideration of the Motion to Compel, the court ORDERS that the Motion is GRANTED. Ms. Kramer's objections come far too late and no motion to quash the subpoena was ever filed by Defendant. Rule 45 requires that all objections must be served 'before the earlier of the time specified for compliance or 14 days after the subpoena is served.' Fed. R. Civ. P. 45(d)(2)(B). 'Failure to serve timely objections waives **all** grounds for objection.' *Poturich*, 2015 U.S. Dist. LEXIS 187149, 2015 WL 12766048, at *2 (quoting *McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002) (emphasis added). Ms. Kramer points to discussions she had with the Eureka City Attorney and the attorneys for the City of Eureka regarding what portions of the documents over which the City may or may not assert attorney-client privilege. However, no such assertion through a motion to quash was ever filed and no timely objections were made. These are sophisticated individuals with a sophisticated client. Certainly Ms. Kramer, and the City, knew that absent a court order (either sustaining an objection or granting a motion to quash) timely compliance with the Rule 45 subpoena was mandatory. [fn] The court finds Ms. Kramer's failure to timely file objections as a waiver. *See Poturich*, 2015 U.S. Dist. LEXIS 187149, 2015 WL 12766048, at *3 ('Quality Sheds has waived all objections to the Subpoena.').

(emphasis in original.)

Plaintiffs' counsel is a sophisticated attorney that has been practicing law since 1989. He routinely practices in Federal Court. He should understand to prevent production by a non-party pursuant to a subpoena, plaintiffs were required to timely file a motion to quash or seek a protective order.

///

Notwithstanding, if this Court believes that plaintiffs' objection was proper, plaintiffs' should be held to the same 14 day statutory requirement to object as non-parties.

The subpoena to Cedar Care was served on March 7, 2025. ECF 127-5. Plaintiffs served objections on March 26, 2025, 19 days after the subpoena was served. ECF 127-6. Following the statutory 14 day requirement imposed on non-parties, plaintiffs' objection was five days late. All arguments raised in both their objection and opposition are waived.

**B.     Substantive Arguments Lack Merit**

Assuming the Court even considers the merits of plaintiffs' opposition, each argument lacks merit.

**1.     Plaintiffs Waived Any Right to Preclude Disclosure Based on HIPPA, Confidentiality, Privacy and the Psychotherapist-Patient Privilege**

Plaintiffs contend that the decedent's substance abuse records from Cedar Care should not be disclosed because they fall under HIPPA, they are private and confidential, and they may be protected by the psychotherapist-patient privilege.[1] ECF 129 at 2-6.

"Section 164.512 subsection (e) of HIPAA allows disclosure of information in the course of judicial and administrative proceedings." *Hutton v. City of Martinez,* 219 F.R.D. 164, 167 (N.D. Cal. 2003); *see* 45 C.F.R. § 164.512(e) (a

---

[1] Plaintiffs also argue that disclosure of decedent records would be a violation of the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56.10 and decedent's California constitutional right to privacy concerning medical information under Cal. Const. art I, § 1. ECF 129 at 2. Because the Court has federal-question jurisdiction over this action, any privacy or privilege determinations are governed by federal rather than by California Law. *See Agster v. Maricopa County*, 422 F.3d 836, 839–40 (9th Cir. 2005); *Much v. Gessesse*, 339 F.R.D. 625, 630 n.8 (C.D. Cal. 2018); *Hutton v. City of Martinez*, 219 F.R.D. 164, 166 (N.D. Cal. 2003). These objections are thus inapplicable, and Howard does not discuss them further. *See Hutton*, 219 F.R.D. at 166.

health care provider may disclose "protected health information in the course of any judicial or administrative proceeding . . . [i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order"); *see also* 42 U.S.C. §§ 290dd–2(a), (b) (even if a patient does not give consent, records of "the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research" may be released by a treatment provider "[i]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause").

Drug abuse patient treatment records are confidential and may only be disclosed in limited circumstances. 42 C.F.R. § 2.2(b)(1). But "[t]he privacy interest in one's confidential medical records is conditional and a limited impairment of the right may be allowed if properly justified." *Grasshopper House. LLC v. Accelerated Recovery Ctrs., LLC*, 2010 U.S. Dist. LEXIS 151952, at *8 (C.D. Cal. Oct. 19, 2010) (quoting *Hutton*, 219 F.R.D. at 166). "Limiting disclosure is meant to ensure that a person who seeks treatment for addiction is not made more vulnerable than [a person] who does not seek treatment." *Rosa v. City of Seaside*, No. C05-03577 JF (HRL), 2009 WL 2252070 (N.D. Cal. July 28, 2009); *see* 42 C.F.R. § 2.3(b)(2).

The court's rulings in *A.H. v. County of Los Angeles*, No. CV 22-03671-SB, 2023 LEXIS 72288 (C.D. Cal., Jan. 19, 2023) and *Nehad v. Browder*, No.: 15-CV-1386 WQH NLS, 2016 LEXIS 49252, (S.D. Cal., Apr. 11, 2016) are directly on point.

In *A.H.*, 2023 LEXIS 72288, at *5-6, the defendants sought to compel compliance with subpoenas issued on third parties for the decedent's medical records and argued that the psychotherapist-patient privilege was waived, the subpoenas were directly relevant to the plaintiffs' claims and damages, and any

1  privacy concerns could be satisfied by producing the records subject to the terms
2  of the existing protecting order. *Id*. Plaintiffs objected contending that the
3  decedent's psychotherapist-privilege and/or HIPAA protections had not been
4  waived and the information was not within the permissible scope of discovery. *Id*.

5        The Court agreed with defendants that the plaintiffs had waived the
6  psychotherapist-patient privilege when they put the decedent's mental health at
7  issue by filing the lawsuit and seeking both survival and wrongful death damages.
8  *A.H.*, 2023 LEXIS 72288, at *6. The Court also found that plaintiffs' put their
9  relationship with the decedent at issue by filing the claim for wrongful death and
10 sought damages for their own emotional pain and suffering. *Id* at *8; *see also I.R.
11 v. City of Fresno*, Nos. 1:12–CV–00558–AWI–GSA, 1:13–CV–00850 AWI GSA,
12 2014 LEXIS 52094, at *12 (E.D. Cal. April 11, 2014.) (holding that "[t]he extent
13 to which decedent was suffering from mental illness…at the time of the incident,
14 may have affected his ability to participate in familial relationships and/or provide
15 financial support to his family.") The court in *A.H.* further noted that the
16 information sought by the subpoenas was also relevant to any argument defendants
17 may assert that their use of force was reasonable in response to the decedent's
18 behavior. *A.H.*, 2023 LEXIS 72288, at *7. Finally, the court in *A.H.* found that the
19 plaintiffs put the decedent's mental health at issue by seeking damages for his
20 emotional distress, including, "pre-death physical and mental pain and suffering,
21 loss of life, and loss of enjoyment of life." *Id* at *8.

22       Similarly, in *Nehad*, 2016 LEXIS 49252, at *2, the parents of an individual
23 shot by San Diego Police Department officers filed a lawsuit for excessive force,
24 interference with familial relationship, assault, battery, negligence, and wrongful
25 death. During discovery, the plaintiffs sought a protective order to prohibit and/or
26 limit the disclosure of the decedent's medical and mental health records. *Id*. at *3.
27 Defendants argued they were entitled to the decedent's psychiatric and medical
28 history because such records were relevant for the following reasons: (1) to

determine the extent of how his schizophrenia, bipolar disorder, and PTSD affected his relationship with plaintiffs; and (2) to determine whether the decedent's mental state was impaired, and therefore, he acted irrationally and/or without proper judgment to corroborate the shooting officer's version of events. *Id*. at *5-6. The court held that the decedent's psychiatric and medical records were relevant because plaintiffs "put their familial relationship with [d]ecedent at issue." *Id.* at *6. The court also found that the records contained information that may bear on plaintiffs' damages because the "valuation of their relationship [with decedent] is not a one-way street." *Id*. at * 14. Accordingly, the court ordered production of decedent's mental health records, holding that, "[d]efendants are entitled to have the discovery process be fair to both parties so that each can present an effective and complete case to the jury." *Id*.

  Here, the decedent's records from Cedar Care are relevant to the claims and defenses in this lawsuit for several reasons. First, and most importantly, as in *A.H.*, plaintiffs have placed decedent's medical history at issue by, among other things, seeking damages for his emotional distress and mental suffering, including pre-death pain and suffering, loss of life, and loss of enjoyment of life. ECF 67, at ¶¶ 64, 66, 110, 131. Accordingly, this information bears on the decedent's mental pain and suffering as well as the loss of his enjoyment of life, which is certainly relevant.

  Second, it is more likely than not that the records from Cedar Care will contain information concerning the decedent's mental health diagnoses, prescription medications, mental health treatment received, and could also reflect a history of suicidal ideation/attempts, treatment for suicide, reported self-harm, etc., all of which are directly relevant to plaintiffs' wrongful death claims. Records already produced in the litigation from Aurora Charter Oak document that about 10 days before the incident the decedent had been suicidal for the past two weeks, was homeless, was using methamphetamine on a daily basis and was diagnosed

with major depressive disorder. Sullivan Decl., ¶2. Those records further document that the decedent voluntarily checked himself into Aurora Charter Oak because of his suicidal ideations and plan. *Id.* He was also experiencing auditory hallucinations and paranoid delusions. *Id.* Discharge records from Aurora Charter Oak a week before the incident document that the decedent was encouraged to stay away from using illicit drugs which could exacerbate his symptoms. *Id.* However, the decedent did not maintain his sobriety, as he was under the influence of methamphetamine at the time of the incident. Exh. 2 to Roistacher Declaration.

Finally, the decedent's records may have information about whether his drug use and addiction impaired his ability to gain employment and/or spend time with his family. Like the decedent in *Nehad*, the decedent's medical records are directly relevant to plaintiffs' alleged damages, including their Fourteenth Amendment claim and loss of familial relationship. Not only does this information bear on the amount of financial support decedent would be able to provide to his family, but also the nature and quality of his relationship with them. See *Nehad*, 2016 LEXIS 49252, at *14.

**2.    Any Privacy Concerns Can Be Obviated by Producing the Cedar Care Records Under the Current Protective Order**

Defense counsel is agreeable to the records being produced under the existing protective order to satisfy any privacy concerns that plaintiffs have.

HIPAA routinely permits disclosure of medical records pursuant to a qualified protective order that prohibits the use or disclosure of "the protected health information for any purpose other than the litigation…" *Gonzalez*, No. 1:07–cv–00949 OWW GSA, 2009 LEXIS 8201, at *9 (E.D. Cal. Jan. 26, 2009); *see also Hutton*, 219 F.R.D. at 167 ("[d]isclosure may be compelled in response to a court order or to a subpoena, discovery request, or other lawful process, even if not accompanied by a court order, if the party seeking the information makes reasonable efforts to secure a qualified protective order. (Section 164.508 (e)(1)

(I)and (ii)(A)and (ii)."); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006) (privacy concerns can be addressed by carefully drafted protective order); *see also Camacho v. McCarthy*, Case No. EDCV 15-2043-JGB, 2020 LEXIS 87086, at *10 (C.D. Cal., Mar. 30, 2020) (overruling plaintiff's objection to defendant's subpoenas to her mental health care providers because such records are relevant to her claims and "any privacy concerns can be appropriately mitigated by a protective order.")

The parties already have a protective order in place. ECF 40, 117. The protective order adequately safeguards decedent's privacy such that there is no reason to preclude production of the Cedar Care records.

**3.    Plaintiffs Lack Standing to Argue that the Cedar Care Records are Irrelevant**

Plaintiffs argue that the Cedar Care records are "irrelevant to the issue of whether it was reasonable for Defendant Howard to have used deadly force against him" because "evidence of Loftin's substance of abuse . . . was unknown to Defendant Howard at the time of the shooting".[2] ECF 129 at 6.

Putting aside that argument ignores that history of drug abuse and mental health treatment is relevant evidence for the jury to consider in evaluating the decedent's quality of life, *N.W. v. City of Long Beach*, 2016 U.S. Dist. LEXIS

---

[2] Notwithstanding, courts repeatedly findinformation not known to officers at the time of the incident is relevant, probative, and admissible. *See, e.g., Turner v. Cty. of Kern,* No. 1:11-CV-1366 AWI SKO, 2014 U.S. Dist. LEXIS 18573, at *7 (E.D. Cal. Feb. 12, 2014) ("[t]hat law enforcement officers may not have suspected intoxication of some sort does not make evidence of intoxication inadmissible, especially when there is a dispute as to the plaintiff/decedent's conduct."); *T.D.W. v. Riverside County*, No. CV-08-232-CAS, 2010 LEXIS 35821, at *10-11 (C.D. Cal., March 11, 2010) (evidence of the decedent's intoxication was properly admitted as probative evidence, with the court finding the evidence corroborated defendant's version of what occurred and provided an explanation for decedent's conduct during the incident.)

9

194469, at *14 (C.D. Cal. June 7, 2016), plaintiffs do not have standing to assert a relevancy argument. *California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014) (citing *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) ("The general rule, however, is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought."); *see also Peccia v. California*, No. 2:18-cv-3049 JAM AC, 2020 U.S. Dist. LEXIS 89066, at *1 (E.D. Cal. May 20, 2020) (citing *California Sportfishing*, 175 F.R.D. at 643); *Robertson v. Catholic Cmty. Servs. of W. Wash.*, No. C19-1618 RSM, 2020 U.S. Dist. LEXIS 64499, at *12 (W.D. Wash. Apr. 10, 2020) (same); *Wells Fargo & Co. v. ABD Ins.*, No. C 12-03856 PJH DMR, 2012 U.S. Dist. LEXIS 173365, at *2 (N.D. Cal. Dec. 10, 2012) (plaintiff lacks standing to object to the subpoena on grounds of relevance or undue burden); *Freed v. Home Depot U.S.A., Inc.*, No. 18cv359-BAS (LL), 2019 U.S. Dist. LEXIS 23763, at *2 (S.D. Cal. Feb. 13, 2019) (quoting *Chevron Corp. v. Donziger*, 2013 U.S. Dist. LEXIS 119622, at *4 (N.D. Cal. Aug. 22, 2013) (A party cannot seek to quash a Rule 45 subpoena except to the extent that it has "a personal right or privilege in the information sought to be disclosed.")

**4.    Admissibility is Not at Issue**

Last, plaintiffs argue that the Cedar Care records are improper character evidence and more prejudicial than probative. ECF 129, at 7-8. Arguing that the Cedar Care documents might not be admissible is premature. This is a discovery dispute. Admissibility is not at issue. *4WEB, Inc. v. NuVasive, Inc.*, No. 24-cv-01021-JLS-MMP, 2025 U.S. Dist. LEXIS 101330, at *12 (S.D. Cal. May 28, 2025) ("this [objection] relates to admissibility, rather than discovery, and is therefore premature at this juncture."); *Doe v. Horne*, 737 F. Supp. 3d 758, 767 (D. Ariz. 2024) ("Federal Rule of Civil Procedure 26(b)(1) permits a party to discover information about 'any matter, not privileged, which is relevant to the subject matter involved in the pending action' regardless of its admissibility at

trial. Fed. R. Civ. P. 26."); *Wenzel v. Klamath Cty. Fire Dist. No. 1*, No. 1:15-cv-01371-CL, 2017 U.S. Dist. LEXIS 35960, at *11 (D. Or. Mar. 14, 2017) ("Admissibility of documents will be addressed at a pretrial conference should the case go to trial.")

## III.  CONCLUSION

For the reasons discussed in the moving papers and herein, this Court should grant Howard's motion and order Cedar Care to produce Loftin's records within 14 days of this Court's order.

Dated: June 26, 2025                                  Dean Gazzo Roistacher LLP

By: */s/ Kimberly A. Sullivan*
Lee H. Roistacher
Kimberly A. Sullivan
Aleries Lau
Attorneys for Defendant
Sergeant Daniel Howard
Email: lroistacher@deangazzo.com
ksullivan@deangazzo.com
alau@deangazzo.com

11

Case No. 5:22-cv-02133-AH-DTB