LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER URQUIJO, et al, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF CALIFORNIA, et al., <br><br> Defendants. | Case No. 5:22-cv-02133-AH-DTB <br><br> **DECLARATION OF PLAINTIFFS' POLICE PRACTICES EXPERT SCOTT DEFOE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Date: January 7, 2026 <br> Time: 1:30 p.m. <br> Courtroom: 9C <br> Judge: Anne Hwang <br><br> Complaint Filed: 11/30/2022 <br> Trial Date: 05/26/2026 |

# DECLARATION OF SCOTT A. DEFOE

I, Scott DeFoe, declare as follows:

1. I am a police practices expert specializing in the procedures of police practices and proper police tactics, including proper procedures for the detention and arrest of individuals and the type and degree of force, if any, appropriate under different circumstances.

2. I am a competent adult and personally familiar with the facts contained herein and would and could competently testify thereto if called upon to do so.

3. My opinions are based in part on my training, professional experience and education. I am a twenty-year veteran of the Los Angeles Police Department. I held supervisory positions for the last 14 years of my career. During my tenure with the LAPD, I received over 100 commendations, including the Medal of Valor, Purple Heart, and Police Star.

4. My qualifications to review this case are set forth in detail in my curriculum vitae, which is attached to the Joint Appendix of Evidence as "Exhibit 55."

5. Before reaching my opinions in this case, I reviewed the following case materials: (1) Third Amended Complaint for Damages; (2) California Highway Patrol, Division Review, Pursuit No. 20215876/20215881; (3) AMR, Patient Name: Chris Urquijo, 6/23/21; (4) California Highway Patrol ("CHP"), Inland Division Critical Incident, Investigation Team, Case No. 21-03274; Colton Police Department, Case No. 21-03271, reports as follows: Sergeant G. Castillo, CL No. 4147; Officer I. Jaramillo, CL No. 4973; Officer N. Campos, CL No. 5029; Station Reports, (AGO 000895-900). (5) Fontana Police Department, Confidential Incident Report, Case No. 210008613; (6) Detailed History for Police Event No. 210610619, 6/23/21; (7) San Bernardino County Sheriff-Coroner Division, Homicide, Case No. 702107343; (8) State of California, Department of Highway Patrol, Vehicle Report, CHP 180, File No. 71257; (9) West Covina Police Department, Original Report,

Case No. CR-21-1596; Incident Detail Report, No. 210622IN01503, 6/22/21; (10) Colton Police Department, Call Detail Report, Call No. 787547; (11) San Bernardino County Sheriff's Division for Police Incident No. AV211730001; (12) California Highway Patrol, ATS Scans, Officer D. Howard, 6/22/21; (13) California Highway Patrol, Beat Schedule, Rancho Cucamonga, 6/1/21-6/30/21; (14) California Highway Patrol, Critical Incident, A-H23; (15) Photographs; (16) California Highway Patrol, T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, OIS No Time Stamps, (1:57:13); (17) Deposition Transcripts and Exhibits as follows: Mark Garcia, taken on June 6, 2025; Nicholas Mercado, taken on June 13, 2025; Jesus Garcia, taken on June 17, 2025; Gabirel Mendez, take on June 27, 2025; Sergio Vasquez, taken on May 15, 2025; Daniel Howard, taken on May 6, 2025; (18) San Bernardino County Sheriff's Department, Case File, Lethal Force Encounter/PC 245(c), DR No. 602100131; (19) Videos, as follows: Video (10:02); CAD Video, (1:00); CAD Video, EWD94198, (0:12); CAD Video, EWD94204, (0:12); CAD Video, EWDW94211, (0:12); CAD Video, 9532, (0:12); CHP, Jesus Garcia BWC, (10:12); CHP MVARS, (1:51); CHP MVARS, (35:03); CHP MVARS 1540337.VOB, (27:41); Fontana Police Department, BWC, Goodland, (7:49); Fontana Police Department, BWC, Diaz, (5:05); Fontana Police Department, BWC, Pisani, (6:12); Screen_AERO006186_202162, (58:03), (AGO 960-1); Screen_AERO006186_202162, (58:03), (AGO 960-2); Fire Photo Girl, San Bernardino Pursuit, (36:22), (AGO 961); (20) CHP, Chapter 5, Pursuit Policy and Emergency Vehicle Operations, Revised 12/2020, California Highway Patrol Manual ("HPM") 70.6; (21) CHP, Chapter 16, Roadblocks, Revised May 2020, HPM 70.6; (22) CHP, Basic Course, Intensive, Course Control Number 1270-00100; (23) CHP, Emergency Response Driving and Pursuit Policy; (24) CHP, Chapter 1, Use of Force, Revised 12/2020; (25) CHP, Expanded Course Outline, Regular Basic Course, Learning Domain #20, Use of Force/De-Escalation; (26) CHP, Start Module 3 Training; (27) CHP Training, Nicholas D. Mercado, Badge

DECLARATION OF SCOTT DEFOE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

No. 021941; (28) Audio-Recorded Interviews, as follows: Corporal Ryan Peppler, (43:16); Officer Jesus Garcia, (1:29:44); Officer Mark Garcia, (1:40:02); Officer Mendez, (1:31:58); Officer Mercado, (1:38:55); Officer Vasquez, (1:39:46); Sergeant Daniel Howard, (2:45:28); (29) Transcript of Recorded Administrative Interview of Daniel Howard taken on 5/10/23, (HOWARD 001-321); (30) California POST Basic Learning Domains as Follows: #1: "Leadership, Professionalism and Ethics"; #2: "Criminal Justice System"; #3: "Policing in the Community"; #19: "Vehicle Operations"; #20: "Use of Force"; #22: "Vehicle Pullovers"; #21: "Patrol Techniques"; #23: "Crimes in Progress"; #33: "Arrest and Control"; #35: "Firearms/Chemical Agents."

      6.    <u>Deadly Force Applications</u>

          a) The use of deadly force is the most serious decision a peace officer has to make. Deadly force applied by a peace officer is force that creates a substantial risk of causing death or serious bodily injury. (*Peace Officer Standards and Training ("POST") 2020 Update, Learning Domain ("LD") 20: Chapter 4—Deadly Force, page 3*).

          b) A peace officer is justified in using deadly force upon another person only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary to defend against an imminent threat of death or serious bodily injury to the officer or to another person. (*Cal. Penal Code Section 835a(c)(1)(A); POST LD 20: Chapter 4—Deadly Force, page 4*).

          c) A threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or

serious bodily injury to the peace officer or another person. (*Cal. Penal Code Section 835a(e)(2)*).

d) Deadly force can only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury. Subjective fear alone does not justify the use of deadly force. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. (*Cal. Penal Code Section 835a(e)(2)*).

e) Police officers are trained that the decision to use deadly force must be guided by the reverence for human life.

f) Pursuant to basic police training and standards, an officer must justify every shot he or she fires.

g) Basic police training teaches that an overreaction in using deadly force is excessive force.

h) Police officers are trained that deadly force should only be used when no reasonable alternative measures are available.

i) Police officers are trained to give a verbal warning before using deadly force, where feasible.

7. There was a gross lack of situational awareness and fundamental tactical errors in this incident. Officers are trained to have situational awareness.

Sergeant Howard failed to remain in a position of cover at the roadblock and formulate a tactical plan and contingencies with CHP Officers Mark Garcia, Gabriel Mendez, Sergio Vasquez, Jesus Garcia and Nicholas Mercado at the I 10 and Sierra Avenue. The Road Block was effectively deployed utilizing four marked police vehicles with their overhead red and blue emergency lights activated. The four police vehicles blocked all four eastbound lanes of the I 10 Freeway. San

Bernardino County Sheriff's Department 40K, (Police Helicopter), was providing overwatch of the Peterbilt truck that was being driven by Mr. Loftin. Police officers are expected to be listening to the police radio. In the event Mr. Loftin did not flee in his vehicle or fled on foot, Sergeant Howard could have established a perimeter with the other officers. In the event Mr. Loftin conducted a U-Turn, they could have resumed the pursuit with the assistance of the police helicopter until the decision was made to either discontinue the pursuit or implement Pursuit Intervention Techniques.

Sergeant Howard made a poor tactical decision and unnecessarily escalated the situation when he hopped over the metal guardrail and walked on the freeway without any cover or concealment towards the front of the Peterbilt truck with his AR-15 semi-automatic rifle positioned on his right shoulder. Sergeant Howard failed to use Time and Distance. The tactical plan should have outlined verbal skills (defusing and de-escalation techniques) and Less Lethal Force options such as: Ballistic Shield, Pepper Ball Round, 40MM Foam Baton Round and/or Direct Impact CS Round, or the deployment of the 870 Remington 12-Gauge Shotgun with a Drag Stabilized 12-Gauge Bean Bag Round. The round has a velocity of 270 feet per second (FPS) with a maximum effective range of 75 feet which could have effectively been deployed from a position of cover.

I base my opinion in part on the following facts and testimony:

- Sergeant Daniel Howard stated that he agrees that 40 King was overhead, (Transcription of Daniel Howard's Administrative Interview, Page 274).
- CHP Lieutenant Joshua Buffum stated, "leaving a position of cover and to stand in front of a Road Block was a very poor decision," (Transcription of Daniel Howard's Administrative Interview, Pages 291-292).
- CHP Lieutenant Joshua Buffum stated, "time was on their side," (Transcription of Daniel Howard's Administrative Interview, Page 293).

- Sergeant Daniel Howard stated that he does not recall if he discussed tactical contingencies with the involved CHP Officers at the Road Block, (Transcription of Daniel Howard's Administrative Interview, Pages 131-132).
- Sergeant Daniel Howard stated that they could have used additional spike strips, (Transcription of Daniel Howard's Administrative Interview, Page 168).
- According to CHP Officer Sergio Vasquez, there was no tactical discussion if the truck tried to go through the barricade, (Deposition Transcript of Sergio Vasquez, Page 42).

8. A reasonable police officer acting consistent with standard police practices would not have used lethal force in this situation. A similarly trained California Highway Patrol Officer/Sergeant would not have considered Mr. Raymond Loftin to be a lethal threat in this set of facts. This was not an immediate defense of life situation, and, as explained further below, under the facts of this case, California Highway Patrol Sergeant Daniel Howard could not shoot Mr. Raymond Loftin for fleeing.

At the time of the shooting and killing of Mr. Raymond Loftin, he was not an Imminent Threat to anyone including California Highway Patrol Sergeant Daniel Howard. Imminent: California Penal Code Section 835a(e)(2) states per Highway Patrol Manual ("HPM") 70.6: "A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed." A threat or potential threat is insufficient to justify the use of deadly force; there must be an immediate or imminent threat of death or serious bodily injury.

Sergeant Daniel Howard violated basic police officer training and standards with respect to the use of deadly force when he shot Mr. Raymond Loftin. A reasonable officer acting consistent with standard police practices would not have used lethal force in this situation. Mr. Raymond Loftin did not pose an immediate threat of death or serious bodily injury to Sergeant Daniel Howard or to any other person at the time of the shots. At the time of the shooting, it was not the case that any person was about to be run over by the vehicle with no opportunity to get out of the way.

Officers are trained to have situational awareness. A reasonable officer would have known that the truck was making another U-Turn when the truck approached the Road Block, slowed down, and began its turn. Sergeant Daniel Howard had information that Mr. Raymond Loftin had previously made U-Turns on the freeway to turn around and start travelling the right direction. When the truck approached the Road Block, the 40-King broadcast that it looked like Mr. Raymond Loftin was going to try to make a U-Turn. A reasonable officer would be expected to be listening to the police radio. A reasonable officer would have recognized that Mr. Raymond Loftin was backing up to make a U-Turn or three-point turn. When the truck was reversing, a reasonable officer in the position of Sergeant Daniel Howard would have recognized that the truck was moving backward and was not moving forward.

I base my opinion in part on the following facts and testimony:

- The videos, <u>CHP, Jesus Garcia BWC, (3:45-4:10) and CHP MVARS 1540337.VOB, (6:40-7:03)</u> show the Peterbilt truck slowing down as it approaches the blockade and reversing away from the officers when Sergeant Howard fired his shots.
- According to CHP Officer Jesus Garcia, he observed the truck slow down as it approached the blockade, (<u>Deposition Transcript of Jesus Garcia, Page 27</u>).

- According to Sergeant Daniel Howard, he agrees the big rig slowed down before he started firing, (Deposition Transcript of Daniel Howard, Page 49).
- According to Sergeant Daniel Howard, he did not have any information that anyone in the big rig was under the influence of drugs or alcohol at the time of the shooting, (Deposition Transcript of Daniel Howard, Page 26).
- The only time Sergeant Daniel Howard was directly in front of the truck was when the truck reversed its course of action, (Transcription of Daniel Howard's Administrative Interview, Page 145).
- According to Sergeant Daniel Howard, while watching the video, it appeared that the truck was reversing when he fired the shots, (Deposition Transcript of Daniel Howard, Page 63).
- According to CHP Officer Sergio Vasquez, the truck appeared to be going in reverse when the shooting happened, (Deposition Transcript of Sergio Vasquez, Page 11).
- According to CHP Officer Nicholas Mercado, when he watched the video, he noticed the truck was going backwards before the shots were fired, (Deposition Transcript of Nicholas Mercado, Page 28).
- According to Sergeant Daniel Howard, he had information that the truck had made U-Turns on the freeway to start travelling the right direction on the freeway, (Deposition Transcript of Daniel Howard, Pages 28, 29, 96).
- The 40-King stated, "Looks like he might be trying to make a U-Turn. Yep, looks he's gonna try to do a U-Turn," (CHP, Jesus Garcia BWC).
- Howard considered the possibility that the truck would see the Road Block and make a U-Turn, (Transcription of Daniel Howard's Administrative Interview, Pages 131, 304).
- The videos, CHP, Jesus Garcia BWC, (3:45-4:10) and CHP MVARS 1540337.VOB, (6:40-7:03) show the Peterbilt truck in the process of making a U-Turn.

-9-    Case No. 5:22-cv-02133-AH-DTB
DECLARATION OF SCOTT DEFOE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

- According to CHP Officer Sergio Vasquez, he did not see any pedestrians as the truck was approaching their location, (Deposition Transcript of Sergio Vasquez, Page 15).

9. In addition, "Shooting at or from Moving Vehicles," which are shots fired at or from a moving vehicle, are rarely effective. Police officers should not position themselves in the path of a vehicle and should move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants. A police officer should only discharge a firearm at a motor vehicle or its occupants when the police officer reasonably believes there are no other reasonable means available to avert the threat of the vehicle, or if deadly force other than the vehicle is directed at the officer or others. Police officers should not shoot at any part of the vehicle in an attempt to disable the vehicle. "Shooting at or From Moving Vehicles" has shown to be a poor tactic in most scenarios. If a driver is wounded or killed when operating a motor vehicle, it prevents their ability to effectively operate a motor vehicle.

In addition, according to HPM 70.6, 1-9, (1) Shooting at a Vehicle. Firearms, when discharged at a vehicle, moving or stationary, shall be done in accordance with this chapter: (a). The discharge of a firearm at a wrong-way, high-speed, or reckless driver or vehicle solely on the assumption that other persons may be injured or killed unless the driving act is terminated is not authorized.

Sergeant Daniel Howard stated that the CHP Policy dictates that you shall not stand directly in front or behind a vehicle, (Transcription of Daniel Howard's Administrative Interview, Page 78).

CHP Lieutenant Joshua Buffum stated, "when were you ever taught to run a vehicle during a felony stop?" Buffum further stated he has never heard anyone ever do that, (Transcription of Daniel Howard's Administrative Interview, Pages 268-269).

/ / /

10. A reasonable police officer acting consistent with standard police practices and outlined in the California Commission on Peace Officers Standards and Training, Student Materials, Learning Domain, No. 20, Use of Force, Version 3.3, Pages 3-4, would have given a verbal warning to Mr. Loftin that he was going to use deadly force against him. Sergeant Howard did not give a verbal warning to Mr. Loftin and did not give Mr. Loftin a reasonable opportunity to comply prior to firing his AR-15 semi-automatic rifle unnecessarily shooting twenty times and killing Mr. Loftin. Given that the Peterbilt truck was moving away from Sergeant Howard at the time of the shooting, it would have been feasible for Sergeant Howard to give a warning that deadly force would be used prior to shooting.

11. Under the facts of this case and pursuant to police standards and training, it would have been inappropriate for Sergeant Howard to shoot at Mr. Loftin or the truck for fleeing or attempting to flee. Police officers are trained that a police officer cannot justify shooting a vehicle or its driver simply because that vehicle was fleeing or trying to leave the area.

Police officers are trained that they can only shoot a fleeing felon where all of the following factors are present: (1) the person threatens the officer with a weapon or the officer has information that the person has committed a felony involving the infliction of serious bodily harm or death, (2) the officer has probable cause to believe that that the person will cause death or serious bodily injury to another person unless immediately apprehended, (3) the officer has probable cause to believe that the use of deadly force is reasonably necessary, and (4) the officer gives some warning that deadly force may be used, where feasible. (*POST LD 20, Chapter 4, Use of Deadly Force, pages 5, 6, 11; Cal. Penal Code 835a*).

These four factors were not met in this case, such that Sergeant Howard could not shoot Mr. Loftin under the Fleeing Felon theory. Mr. Loftin did not inflict or threaten to inflict death or serious bodily injury against anyone at any point relative to this incident; Mr. Loftin did not have a firearm, Mr. Loftin posed no immediate

threat of death or serious bodily injury necessitating deadly force, and Sergeant Howard did not give Mr. Loftin a verbal warning that deadly force would be used prior to shooting.

I base my opinion in part on the following facts and testimony:

- Sergeant Daniel Howard stated that prior to the shooting, he did not know if an ADW with a Vehicle occurred, (Transcription of Daniel Howard's Administrative Interview, Page 211).
- Sergeant Daniel Howard stated that he agrees that truck had not collided with a vehicle before the shooting, (Transcription of Daniel Howard's Administrative Interview, Page 221).
- According to Sergeant Daniel Howard, he did not give a verbal warning that he was going to use deadly force, (Deposition Transcript of Daniel Howard, Page 81).
- According to CHP Officer Jesus Garcia, he did not hear any commands or a verbal warning to the driver of the truck before he heard shots being fired, (Deposition Transcript of Jesus Garcia, Page 23).
- According to CHP Officer Sergio Vasquez, he had no specific information if the driver of the big rig had a criminal history, if he was under the influence of drugs or alcohol or if the big rig collided with any vehicles before the shooting, (Deposition Transcript of Sergio Vasquez, Page 7).

12. Police officers are trained to reassess the situation when using deadly force. It does not appear that Sergeant Daniel Howard reassessed when he was firing his twenty shots. According to Sergeant Daniel Howard, he did not assess at all during the time he was shooting, (Deposition Transcript of Daniel Howard, Page 20).

13. From the standpoint of police practices, including basic police training, POST standards, and the California Highway Patrol's own policies, Sergeant Daniel

Howard's use of deadly force was improper, inappropriate, excessive and unreasonable, including (<u>but not limited to</u>) <u>for the following reasons</u>:

    a) <u>No Immediate Defense of Life Situation</u>. Police officers are trained that they can only use deadly force in an Immediate Defense of Life Situation, in other words, when there is an immediate or imminent threat of death or serious bodily injury. A fear of future harm is not enough. There was no immediate defense of life situation when Sergeant Daniel Howard fired his shots. Nobody was about to be run over by Sergeant Daniel Howard's vehicle at the time of the shots.

    b) <u>Subjective fear is insufficient</u>. Basic police training requires that any use of deadly force must be based on an "objective" rather than "subjective" "reasonable necessity" of action to "imminent danger." In this case, the record does not support any objectively reasonable explanation that Mr. Raymond Loftin posed an immediate threat of death or serious bodily injury at the time that any of the shots were fired. Mr. Raymond Loftin was unarmed, and no person was about to be struck by Mr. Raymond Loftin's vehicle.

    c) <u>Violation of basic Police Training.</u> Sergeant Daniel Howard violated police training and standards surrounding shooting at vehicles and their driver when he shot Mr. Raymond Loftin while Mr. Raymond Loftin occupied the driver seat of a vehicle. There was no person about to be struck by Mr. Raymond Loftin's vehicle when Sergeant Daniel Howard fired his shots. Therefore, there was no reason for Sergeant Daniel Howard to shoot.

d) <u>No crime involving the infliction of serious injury or death.</u> Sergeant Daniel Howard was not responding to a crime involving the infliction of death or serious bodily injury. Sergeant Daniel Howard had no information that Mr. Raymond Loftin was armed and no information that anyone had been injured.

e) <u>Unarmed</u>. Mr. Raymond Loftin did not have a firearm or other weapon during this incident.

f) <u>No verbal threats</u>. Mr. Raymond Loftin never verbally threatened to harm anyone.

g) <u>Reasonable alternative measures available</u>. Officers are trained that they can only use deadly force in a "last resort" situation. Sergeant Daniel Howard had other reasonable measures available, including moving out of the way, waiting for backup, giving further commands, boxing the truck in, and setting up a perimeter for later apprehension.

h) <u>No reverence for human life</u>. Police officers are trained that they must show a reverence for human life. Sergeant Daniel Howard showed no reverence for human life when he fired at Mr. Raymond Loftin.

i) <u>Police officers are responsible for justifying every shot</u>. Police officers are trained that they must justify every shot they fire. Sergeant Daniel Howard is responsible for every shot that he fired in this case, and all twenty of his shots were unjustified.

1  I declare under penalty of perjury that the foregoing is true and correct, and
2  that this was executed this 24th day of November, 2025 at Huntington Beach,
3  California.

*[signature]*

Scott DeFoe